# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

CHARLES E. WATTS,

    Petitioner,

vs.

BRIAN WILLIAMS, et al.,

    Respondents.

Case No. 2:09-CV-01035-PMP-(GWF)

**ORDER**

Before the court are the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (#3), respondents' answer (#7), and petitioner's reply (#8). The court finds that relief is not warranted, and the court denies the petition (#3).

After a jury trial in the Eighth Judicial District Court, petitioner was convicted of one count of trafficking in a controlled substance and one count of felony escape. Petitioner appealed, and the Nevada Supreme Court affirmed. Petitioner then filed a habeas corpus petition in state court. The district court denied the petition. Petitioner appealed, and the Nevada Supreme Court affirmed. Ex. 2 (#8). Petitioner then commenced this action.

In both of petitioner's grounds for relief, he argues that he received ineffective assistance of counsel. A petitioner claiming ineffective assistance of counsel must demonstrate (1) that the defense attorney's representation "fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694.

Review of an attorney's performance must be "highly deferential," and must adopt counsel's perspective at the time of the challenged conduct to avoid the "distorting effects of hindsight." <u>Strickland</u>, 466 U.S. at 689. A reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" <u>Id.</u> (citation omitted).

Congress has limited the circumstances in which a federal court can grant relief to a petitioner who is in custody pursuant to a judgment of conviction of a state court.

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." <u>Harrington v. Richter</u>, 131 S. Ct. 770, 784 (2011).

> Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of this Court, § 2254(d)(1); <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000); or that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

<u>Harrington</u>, 131 S. Ct. at 785. "For purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'" <u>Id.</u> (citation omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." <u>Id.</u> (citation omitted).

> [E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

<u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004).

> Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.

Harrington, 131 S. Ct. at 786.

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Id., at 786-87.

Police officer James Parker noticed petitioner and a woman named Bridgette Newman walking in the parking lot of Arizona Charlie's Hotel and Casino in Las Vegas. He contacted them, and then he learned that petitioner had a warrant out for his arrest. Parker testified that he saw petitioner start digging into his pockets. Ex. 1B, p. 67-68 (#8). Newman testified that petitioner's hands were behind him, not in his pockets. Ex. 1C, p. 114 (#8). Parker testified that he told petitioner to take his hands out of his pockets. When petitioner did not comply, Parker drew his firearm and demanded that petitioner take his hands out of his pockets. Ex. 1B, pp. 68-69 (#8). Petitioner complied, but his hands were closed. Parker noticed a plastic bag with a white substance in it. Parker demanded that petitioner open his hands, petitioner started backing away from Parker's car, and then petitioner ran away. Id., pp. 69-70 (#8). Newman testified that Parker aimed his firearm at petitioner and then petitioner ran away. Ex. 1C, pp. 114-15 (#8). Parker testified that he saw petitioner throw the object in his hand under a parked car. Ex. 1B, p. 71 (#8). Newman testified that she did not see whether petitioner had anything in his hands or dropped anything from his hands. Ex. 1C, p. 122 (#8). Parker testified that petitioner ran from where he threw the object, turned after 20 to 30 feet, and faced Parker in a fighting stance. Ex. 1B, pp. 72-73 (#8). Meanwhile, police sergeant Prokopios Ziros, whose car Parker had seen enter the parking lot while Parker was demanding that petitioner show his hands, tackled petitioner to the ground. Id. In the struggle to restrain petitioner, he removed a glass pipe and threw it on the ground. Ex. 1B, p. 121 (#8). Ziros then retrieved the object that Parker said had been thrown under the parked car. Id., p. 122 (#8). Later tests confirmed that the substance inside the bag was methamphetamine. Ex. 1C, p. 69 (#8).

1  Petitioner then broke from Parker's grip and ran again.  The officers caught him quickly.  Ex. 1B, p.
2  124 (#8).  Other police officers arrived to assist, Ziros searched petitioner, and he found a scale with
3  what appeared to be residue of methamphetamine.  Ex. 1C, p. 11 (#8).
4        The prosecution introduced a videotape into evidence.  It started at the end of the first foot
5  chase.  Therefore, the videotape did not show petitioner throwing away an object or Ziros' arrival at
6  the scene.  Ziros testified that he asked the security office at Arizona Charlie's whether they had any
7  videotape of the incident, and that the tape as presented was what they gave him.  Ex. 1C, pp. 17-25
8  (#8).
9        The court will take petitioner's two grounds out of order.  In ground 2, petitioner claims that
10 trial counsel provided ineffective assistance because counsel did not investigate whether the security
11 cameras caught more of the incident than what was shown at trial.  On this issue, the Nevada
12 Supreme Court held:

> Appellant claimed that his trial counsel was ineffective for failing to investigate a surveillance video from Arizona Charlie's Hotel and Casino that covered the parking lot during his arrest.  At trial, the surveillance video from Arizona Charlie's was played for the jury.  The video showed appellant's arrest; however, appellant claimed that an investigation would have uncovered further surveillance video.  Appellant failed to demonstrate that he was prejudiced.  At trial, Officer Ziros testified that he asked Arizona Charlie's for any video recordings of the incident and that the video played in court was the entirety of what Arizona Charlie's gave him.  As such, appellant failed to demonstrate that an investigation would have uncovered any additional evidence and would have resulted in a reasonable probability of a different outcome.  Further, a review of the record reveals that there was substantial evidence of appellant's guilt, given the testimony of two police officers who witnessed appellant discard drugs and drug paraphernalia.  Therefore, the district court did not err in denying this claim.

20 Ex. 2, p. 3 (#8) (footnote omitted).  Just as in the state courts, petitioner has not demonstrated that a
21 videotape of the entire incident exists.
22       Another reason exists why the Nevada Supreme Court's decision was a reasonable
23 application of Strickland.  Counsel had a strategic reason for not investigating whether the videotape
24 existed.  "To support a defense argument that the prosecution has not proved its case it sometimes is
25 better to try to cast pervasive suspicion of doubt than to strive to prove a certainty that exonerates."
26 Harrington, 131 S. Ct. at 790.  This is what counsel did in petitioner's case.  At the time of settling
27 the instructions to the jury, counsel tried unsuccessfully to have the jury instructed that if they
28 determined that the police were grossly negligent in failing to obtain and preserve the videotape of

1   the incident, then they could presume that the missing videotape footage was favorable to petitioner.

2   Ex. 1C, pp. 97-107 (#8). Counsel also argued to the jury that the videotape did not show the whole

3   story:

> We saw the tape. We saw a person in a white T-shirt standing not even five feet away from the vehicle where there [sic] drugs were recovered; and yet when Officer Parker testified there was no one else around. Didn't even see this guy, three feet from where the drugs were recovered.
>
> You heard it's a high crime area. It's entirely possible this man in the white T-shirt sees Charles running, sees cops there: Oh my gosh, let me get rid of what I've got, make sure they don't come and get me. Why is he still hanging around? I submit to you, ladies and gentlemen, he's hanging around so he can recover his drugs once the cops leave. Do you have an abiding conviction that that's not what happened?

10  Ex. 1D, pp. 14-15 (#8). Next, counsel argued that the prosecution had not done its job well:

> Let's talk about the video. The State has a video that shows from the point when Charles is in custody to the recovery of whatever object was thrown to Charles breaking away. Where's the rest of the video? There's no video showing Charles taking off running. There is no video of him throwing anything. The State didn't bring in anybody in here to let you know why you don't have the whole video. That's their burden.

14  Ex. 1D, p. 20 (#8). Investigating the existence of the videotape had serious risks. First, it is

15  possible that the beginning of the incident was not caught on videotape. If counsel inquired and

16  learned that the videotape did not exist, then counsel could not have argued that the prosecution was

17  sloppy. All of the uncertainty and doubt that counsel was able to lay upon the prosecution would

18  have disappeared. Counsel would have been left with the competing testimonies of two police

19  officers and petitioner's girlfriend. Second, it is possible that the videotape existed, and that it

20  confirmed the testimonies of the police officers. Petitioner would have been convicted. Counsel

21  had to choose what strategy to pursue, and investigating whether the video actually existed ran a

22  good chance of benefitting the prosecution. Counsel's strategy did not work, but the court cannot

23  use "the harsh light of hindsight" to fault that strategy. See Harrington, 131 S. Ct. at 789. The

24  Nevada Supreme Court applied Strickland reasonably. 28 U.S.C. § 2254(d)(1)

25      Ground 1 contains two claims, that the prosecution withheld exculpatory evidence, in the

26  form of the videotape of the entire incident, and that appellate counsel provided ineffective

27  assistance on direct appeal by not arguing that the prosecution withheld exculpatory evidence. On

28  these issues, the Nevada Supreme Court held:

> Appellant claimed that his appellate counsel was ineffective for failing to argue on direct appeal that the State withheld exculpatory evidence by not presenting a surveillance video of the entire incident at Arizona Charlie's. Appellant failed to demonstrate that he was prejudiced. As stated above, Officer Ziros testified that the surveillance tape that was played before the jury was the entirety of the tape that Arizona Charlie's provided. Further, there was substantial evidence of appellant's guilt given the testimony of two police officers, who witnessed appellant discard drugs and drug paraphernalia. Thus, appellant failed to demonstrate that any claim regarding the withholding of exculpatory evidence would have had a reasonable probability of success on appeal. Therefore, the district court did not err in denying this claim.
>
> Finally, appellant claimed that the State withheld exculpatory evidence by not presenting a surveillance video of the entire incident at Arizona Charlie's. Appellant failed to demonstrate that the State withheld surveillance video and appellant failed to demonstrate that the video was material to his defense. Thus, appellant failed to demonstrate good cause for failing to raise this claim in his direct appeal and prejudice. Therefore, the district court did not err in denying this claim.

Ex. 2, pp. 4-5 (#8). The prosecution must disclose potentially exculpatory evidence to the defense. Brady v. Maryland, 373 U.S. 83 (1963). "There are three components of a true Brady violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281-282 (1999). Petitioner has never satisfied the first component because he has never demonstrated that a videotape of the entire incident exists. Furthermore, there is no evidence that the prosecution did not disclose potentially exculpatory evidence from petitioner. Petitioner's trial counsel viewed the videotape in the prosecutor's office, and the prosecutor provided petitioner's counsel with a copy of the tape when counsel asked for it. Ex. 1C, pp. 99-100 (#8). Armed with that knowledge, counsel could have inquired with Arizona Charlie's whether more videotape of the incident existed. Counsel did not so ask because, as noted above, counsel's strategy was to argue that the prosecution had failed to prove its case. Given that trial counsel knew about the prosecution's videotape and that trial counsel could have, but did not, investigate whether the videotape of the entire incident existed, appellate counsel would not then have succeeded with an argument that the prosecution had withheld the videotape of the entire incident from the defense. The Nevada Supreme Court applied Strickland reasonably. 28 U.S.C. § 2254(d)(1).

Reasonable jurists might debate over the court's conclusions, and the court will issue a certificate of appealability.

IT IS THEREFORE ORDERED that the petition for a writ of habeas corpus (#3) is **DENIED**. The clerk of the court shall enter judgment accordingly.

IT IS FURTHER ORDERED that a certificate of appealability is **GRANTED** on the following issues:

1. Whether trial counsel provided ineffective assistance by not investigating whether a videotape of the entire incident existed;

2. Whether the prosecution withheld potentially exculpatory evidence by not disclosing the videotape of the entire incident; and

3. Whether appellate counsel provided ineffective assistance by not arguing that the prosecution had withheld potentially exculpatory evidence.

DATED: November 18, 2011.

_____
PHILIP M. PRO
United States District Judge